Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
tkashima@milberg.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROSEMARIE RAMIREZ** and **CHRISTOPHER BATES**, *individually and on behalf of all others similarly situated,*<br><br>                    Plaintiffs,<br><br>v.<br><br>**BEYOND MEAT, INC**., a Delaware Corporation,<br><br>                    Defendants. | Case No.:2:22-cv-04404<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. Violation of New York General Business Law § 349; and<br>2. Violation of New York General Business Law § 350;<br>3. Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rosemarie Ramirez and Christopher Bates ("Plaintiffs") bring this Class Action Complaint against Defendant Beyond Meat, Inc. ("Beyond Meat" or "Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to their own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by Plaintiffs' attorneys:

## **INTRODUCTION**

1.     This is a civil class action lawsuit brought by Plaintiffs on behalf of all consumers who purchased Defendant's Beyond Meat products for personal or household use, including but not limited to: Beyond Meat Sausage Plant-Based Dinner Links Hot Italian 14 oz, Beyond Meat Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz, Beyond Meat Beyond Beef Plant-Based 16oz Patties, Beyond Meat Beyond Beef Plant-Based Ground Beef, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz, Beyond Meat Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz, Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct Classic 10 oz, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz ("Beyond Meat Products" or the "Products").

2.     Amidst the growing consumer demand for meat substitutes, Defendant has, and continues to, design, manufacture, promote, market, advertise, package, label, distribute, and sell Beyond Meat Products.

3.     Beyond Meat Products' labels, and Defendant's related marketing claims, are false and misleading because Defendant: (1) miscalculates and overstates the Products' protein content, which is measured in grams per serving determined by nitrogen testing; (2) miscalculates and overstates the quality of the protein found in its products, which is represented as a percentage of daily value and calculated by the Protein Digestibility Amino Acid Corrected Score method

("PDCAAS"); and (3) misleads consumers into believing that the Products provide equivalent nutritional benefits to that found in traditional meat-based products.

4.     By advertising protein content on the Beyond Meat Products' front label, Defendant misleads consumers into believing that they stand to benefit from the Products' stated protein content.

5.     Defendant also makes numerous false and misleading claims and/or omissions on its website, in its promotional and marketing materials, and on the Products' nutritional labels.

6.     Defendant has engaged in unfair and/or deceptive business practices by intentionally misrepresenting the nature and quality of Beyond Meat Products on the Products' respective nutrition labels and by failing to follow federal regulations that set forth the appropriate testing methodologies for determining protein content. Defendant has been unjustly enriched as a result of these and related practices.

7.     Plaintiffs and members of the Proposed Classes were injured by Defendants false, fraudulent, unfair, deceptive, and misleading practices. Accordingly, Plaintiffs seek compensatory damages and equitable remedies for themselves(s) and members of the Proposed Class.

## THE PARTIES

8.     Plaintiff Rosemarie Ramirez is domiciled in Congers, New York.

9.     Ms. Ramirez purchased Beyond Meat's Beyond Burger Plant-Based Patties approximately 3-4 times a month for the last few years.  The purchases were made in New York.

10.     Beyond Meat products are sold at many stores near Conger, New York, such as ShopRite, Foodtown, and Target.  Ms. Ramirez purchased the products at a ShopRite store in her area, and possibly at Food Town as well.  To the best of her recollection, Ms. Ramirez paid approximately $5-6 dollars for the product, which is the typical price range for the Beyond Burger Plant-Based

3

Patties.

11.    When Ms. Ramirez purchased the products, she relied on various labeling representations about the nutritional qualities of the product, including that it had 20 grams of plant protein per serving, and a daily protein value of 40%.  Ms. Ramirez read and relied on both the front labeling, and the nutrition information on the back of the package.

12.    However, the Patties Ms. Ramirez purchased did not have 20 grams of protein per serving, and did not provide a daily protein value of 40%.   Instead, the products would have had approximately 18 grams of protein, and an actual daily protein value of approximately 35%.

13.    Christopher Bates is domiciled in Worcester, Massachusetts.

14.    On February 5, 2021, Plaintiff Bates purchased Beyond Meat's Frozen Plant Based Meatless Beef-Style Patties for approximately $3.50.

15.    On February 5, 2021, and again on November 3, 2021, Plaintiff Bates purchased Beyond Meat's Beyond Beef Plant-Based Ground Beef for approximately $8.

16.    Plaintiff Bates purchased each of the above-described products from Target.

17.    When Plaintiff Bates purchased the products, they relied on various labeling representations about the nutritional qualities of the product, including the number of grams of plant protein per serving, and the daily protein value.  Plaintiff Bates read and relied on both the front labeling, and the nutrition information on the back of the package.

18.    However, the labeling on the products Plaintiff Bates purchased provided false information regarding the number of grams of plant protein per serving and the daily protein value.

19.    The labeling of the Plant-Based Meatless Beef-Style Patties stated that they had 20 grams of protein per serving, and a daily protein value of 40%.   Instead,

CLASS ACTION COMPLAINT

the products would have had approximately 18 grams of protein, and an actual daily protein value of approximately 35%.

20.   The labeling of the Beyond Beef Plant-Based Ground Beef stated that the product provided an actual daily protein value of approximately 40%, but in fact, the product would have provided only approximately 7%.

21.   Plaintiffs would not have purchased the products at issue here had they known at the time that the labeling was false.

22.   Plaintiffs regularly go to stores where Beyond Meat Products are sold. Plaintiffs would purchase Beyond Meat Products again in the future if the products accurately disclosed the amount of protein in them.  However, if that change were made, Plaintiffs would have no practical way to know if the product labeling was in fact true.  As a result, they may either refrain from purchasing Beyond Meat Products in the future or may purchase them incorrectly assuming that they have been improved such that the labeling disclosing the amount of protein in them per serving is correct.

23.   Plaintiffs were injured by Defendant's fraudulent and deceptive practices.  Plaintiffs, and other consumers, paid a premium price for the Beyond Meat Products due to the misrepresentations regarding the protein contents contained therein.  Had Defendant's been truthful regarding the Beyond Meat Products, Plaintiffs and other consumers would have not purchased the Products or paid less. Plaintiffs would consider buying the Products again if the stated amount of protein on the front of the Products was corrected and Defendant engaged in the correct testing for the %DV for protein on the back of the Products' label.  Plaintiffs overpaid for the products as a result of the false labeling.

24.   Defendant, Beyond Meat, Inc. is a publicly traded Delaware Corporation with its headquarters in El Segundo, California, and is registered as a foreign corporation in the State of California.  Defendant manufactures, markets, distributes and retails the Beyond Meat Products from its California Headquarters.

## JURISDICTION AND VENUE

25.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

26.    This Court has personal jurisdiction over Defendant because it is headquartered in the State of California, regularly conducts business in this District and has extensive contacts with this forum.  Defendant purposefully availed itself to California's jurisdiction and distributes Beyond Meat Products from this District to thousands of locations throughout the country.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District and transacts substantial business here.

## FACTUAL ALLEGATIONS

### A.    Background

28.    Defendant, Beyond Meat, Inc. is a plant-based meat substitutes company that was founded in 2009 and launched its initial product line in 2012. As of December 2021, Beyond Meat had products available at approximately 130,000 retail and foodservice outlets in over 90 countries worldwide.  In the United States, Beyond Meat Products are available for purchase at 32,000 retail stores and 47,000 restaurants.  Beyond Meat Products are sold in all 50 states, and are available for purchase in major grocery stores, big box stores, and other retail locations throughout the United States.

29.    At all relevant times, Defendant has, and continues to, design, manufacture, promote, market, advertise, package, label, and distribute Beyond Meat Products in a consistent and uniform manner throughout the United States.

30.    Defendant describes itself as a "leader in plant-based meat" and "Revolutionary Plant-Based Protein Leader."  Defendant exceeded $400 million in net revenue during 2020 and continues to gain market share in the $1.4 trillion

global meat industry.

31.     Defendant has enlisted the help of many celebrities to advertise its Products as an easy way to introduce protein into one's diet and describes the Products as the "future of protein" on its website and in its marketing materials. 26. Defendant also uses social media platforms to promote the Products and attract potential consumers, and Defendant launch its #FutureofProtein marketing campaign on Instagram, Twitter, and Facebook.

32.     Unsurprisingly, Defendant highlights the protein content of the Beyond Meat Products in its advertising, particularly the amount of protein contained therein.  For example:




CLASS ACTION COMPLAINT

33.     In fact, Beyond Meat goes the extra mile to represent that the Products are the "future of protein" and claims that eating the Products allows consumers to get high-quality protein in their diet while simultaneously helping the environment:







CLASS ACTION COMPLAINT

Beyond Meat goes the extra mile to represent that the Products are the "future of protein" and claims that eating the Products allows consumers to get high-quality protein in their diet while simultaneously helping the environment.

34.    Beyond Meat explicitly represents that its Products have enough high-quality protein to help build muscle:

**DOES PLANT PROTEIN BUILD MUSCLE LIKE ANIMAL PROTEIN?**

**B.    The Importance of Protein**

35.    Protein is an essential part of a healthy diet and is necessary for normal bodily functions. "Protein is a component of every cell in the human body and is necessary for proper growth and development, especially during childhood, adolescence, and pregnancy. [It] helps your body build and repair cells and body tissue, and is important for many body processes, such as blood clotting, fluid balance, immune response, vision, and production of hormones, antibodies, and enzymes."[1]

36.    A high-protein diet provides additional benefits, including appetite control, weight and body composition management, muscle growth and maintenance, improved cardiometabolic health, better strength, improved immune

---

[1] Interactive Nutrition Facts Label - Protein (fda.gov) (last visited March 16, 2022).

CLASS ACTION COMPLAINT

function, and faster tissue recovery. [2]

37.     In light of these benefits, many consumers seek out high-protein products in order to achieve a high-protein diet.  Similarly, individuals with specific health concerns, including pregnant, breastfeeding, or conditions that inhibit protein absorption, require more protein than the daily recommended minimum.  But even the average sedentary man needs 56 grams per day of protein and the average sedentary woman needs 46 grams of protein per the Dietary Reference Intake.  Thus, the amount of protein in a food product is material to consumers.

### C.     Federal Regulations and Methodologies for Calculating Protein Content and Daily Value Percentage

38.     Pursuant to the Food, Drug, and Cosmetics Act ("FDCA") (as amended by the Nutrition Labeling and Education Act), the United States Food and Drug Administration ("FDA") governs the nutritional labeling of food and requires manufacturers to provide information about the level of certain nutrients, including protein. See 21 C.F.R. §101.9(c)(7).

39.     The FDA requires manufacturers to publish a product's protein content on its nutritional label, which is "[a] statement of the number of grams of protein in a serving." *Id*.

40.     Generally, the "Nitrogen Content Method" is used to calculate a given food product's protein content. Under this methodology, protein content is calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International' . . . , except when the official procedure for a specific food requires another factor.

41.     However, the FDCA requires disclosure of protein quality, which is determined through a more rigorous testing methodology called the Protein Digestibility Amino Acid Corrected Score ("PDCAAS") to calculate the "corrected

---

[2] Interactive Nutrition Facts Label - Protein (fda.gov) (last visited March 16, 2022).

amount of protein per serving:" The 'corrected amount of protein (gram) per serving' . . . is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility. . . .The protein digestibility corrected amino acid score shall be determined by methods given in . . . 'Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation,' Rome, 1990, except that when official AOAC procedures described in section (c)(7) of this paragraph require a specific food factor other than 6.25, that specific factor shall be used. 21 C.F.R. §101.9(c)(7)(ii).

42.     Beyond Meat is required to use the PDCAAS calculation for the Products rather than some other non-sophisticated method. The regulation requires that for any product making a protein claim (which is contained on the front panel of all of the Products), the product must contain a statement of protein content as a percentage of the Daily Reference Value calculated using the "corrected amount of protein"—an amount that is not calculated by simply multiplying the amount of nitrogen by 6.25, but by taking into account the "protein quality value," or "protein digestibility-corrected amino acid score." *See* 21 C.F.R. § 101.9(c)(7)(ii).

43.     So for a product like the Products, the protein content *may* be calculated using the nitrogen method, **but it also *must* be stated as a percentage of the Daily Reference Value using the corrected amount of protein**. This alternative to the nitrogen method (PDCAAS) is only required in the statement of percentage; it is not required for statements of absolute protein. Moreover, the regulations implicitly acknowledge that the nitrogen method is not the most accurate way to describe protein content.

44.     Recently, the FDA reaffirmed these requirements.[3]

45.     Any statement that the FDA somehow has abdicated the requirement for PDCASS testing for protein content is incorrect. The regulations state the

---

[3] https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label#LabelClaims

CLASS ACTION COMPLAINT

following:

    i) **A statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section**, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as Percent of Daily Value, may be placed on the label, **except that such a statement shall be given if a protein claim is made for the product,** or if the product is represented or purported to be specifically for infants through 12 months or children 1 through 3 years of age. When such a declaration is provided, it should be placed on the label adjacent to the statement of grams of protein and aligned under the column headed "Percent Daily Value," and expressed to the nearest whole percent. However, the percentage of the RDI for protein shall not be declared if the food is represented or purported to be specifically for infants through 12 months and the protein quality value is less than 40 percent of the reference standard.

    ii) **The "corrected amount of protein (gram) per serving" for foods represented or purported for adults and children 1 or more years of age is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility**. If the corrected score is above 1.00, then it shall be set at 1.00. **The protein digestibility-corrected amino acid score shall be determined by methods given in sections 5.4.1, 7.2.1, and 8.00 in "Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," except that when official AOAC procedures described in paragraph (c)(7) of this section require a specific factor other than 6.25, that specific factor shall be used**. For foods represented or purported to be specifically for infants through 12 months, the corrected amount of protein (grams) per serving is equal to the actual amount of protein (grams) per serving multiplied by the relative protein quality value. The relative protein quality value shall be determined by dividing the subject food protein PER value by the PER value for casein. If the relative protein value is above 1.00, it shall be set at 1.00.

### D.   Defendant's Marketing of The Protein Content of The Beyond Meat Products

    46.    Defendant advertises its Beyond Meat Products with the Protein contents prominently displayed on the front of the packet. Indeed, the fact that

Defendant advertises the protein contained on the front of the package (as opposed to on the back of the package, in the required nutritional facts section) demonstrates that Defendant is aware that its consumers specifically seek out products high in protein.   Otherwise, a manufacturer would not devote such limited and valuable labeling real estate to such claims.

47.     For example, Beyond Meat advertises the Beyond Beef Plant-Based 16oz Patties as being "Plant-Based Patties" with "20G of Plant Protein Per Serving" on the front of the Product:



48.     The Beyond Meat Products are all made with "Pea Protein" as their basis for the "20G of Plant Protein Per Serving" claim:

INGREDIENTS: Water, Pea Protein, Expeller-Pressed Canola Oil, Refined Coconut Oil, Rice Protein, Natural Flavors, Dried Yeast, Cocoa Butter, Methylcellulose, Contains 1% or less: Potato Starch, Salt, Potassium Chloride, Beet Juice Color, Apple Extract, Pomegranate Concentrate, Sunflower Lecithin, Vinegar, Lemon Juice Concentrate, Vitamins and Minerals (zinc sulfate, niacinamide [vitamin B3], pyridoxine hydrochloride [vitamin B6], cyanocobalamin [vitamin B12], calcium pantothenate).
Peas are legumes. People with severe allergies to legumes like peanuts should be cautious when introducing pea protein into their diet because of the possibility of a pea allergy. Contains no peanuts or tree nuts.

49.     These protein claims are repeated on the back of each Beyond Meat

13

Product's labels, in the nutritional facts section.  Defendant claims the 20G of Plant Protein Per Serving is 40% of the Daily Value for protein on the Nutrition Facts for the patties:



50.    Defendant does the same with the rest of its Beyond Meat Products. Because it advertises a protein content claim on the front of its labels, Defendant must use the PDCAAS method of testing on its Beyond Meat Products:

**E.     The Products Do Not Contain Accurate Protein Amounts On The Front Or Back Of The Label**

51.     Plaintiffs engaged in industry-standard testing and discovered that despite the Products representing certain amounts of protein, the Products contained less than the represented amount.

52.     As manufacturers, suppliers, wholesalers, distributors, and/or retailers, Defendant tested, or should have tested, the Products prior to sale. As such, Defendant knows or should have known that the claims are false and misleading on the Products.

53.     Defendant's stated protein amount and protein DV% claims are false and misleading. As independent lab testing reveals, the quantity of Protein determined by nitrogen in all but four of the Products are less than what Defendant represented. Even worse, the DV% of Protein for all of the Products is a small

CLASS ACTION COMPLAINT

fraction compared to the DV% represented by Defendant.

54.     Plaintiffs' counsel commissioned testing of Defendant's Products, which show that the Products do not contain the amount of stated protein amount and/or protein DV%. For example, Defendant's Beyond Beef Plant-Based Ground 16oz Patties, which is labeled as "20G Per Serving" and "40% DV" for protein, actually contains 19G Per Serving by nitrogen testing, and 7% DV for protein. This represents an underfill of 5% for protein content and an underfill of 33% for %DV for protein.

55.     Plaintiffs' results are captured in the below chart:

| **Beyond Meat Product** | **Protein Claim** | **DV % Claim** | **Actual Protein Amount** | **Actual DV%** | **% Difference Protein** | **% Difference DV** |
|---|---|---|---|---|---|---|
| Sausage Plant-Based Dinner Links Hot Italian 14 oz | **16G Per Serving** | **25%** | **13G Per Serving** | **5%** | **-18.75%** | **-15%** |
| Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz | **16G Per Serving** | **25%** | **13G Per Serving** | **5%** | **-18.75%** | **-20%** |
| Beyond Beef Plant-Based 16oz Patties | **20G Per Serving** | **40%** | **18G Per Serving** | **36%** | **-10%** | **-4%** |
| Beyond Beef Plant-Based Ground Beef | **20G Per Serving** | **40%** | **19G Per Serving** | **7%** | **-5%** | **-33%** |

| Product | Protein | % | Serving | % | | |
|---|---|---|---|---|---|---|
| Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz | **11G Per Serving** | **22%** | **10G Per Serving** | **4%** | **-10.1%** | **-18%** |
| Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz | **11G Per Serving** | **22%** | **10G Per Serving** | **4%** | **-10.1%** | **-18%** |
| Beyond Chicken Plant-Based Breaded Tenders | **11G Per Serving** | **16%** | **13G Per Serving** | **2%** | **+18%** | **-14%** |

56. By permanently marking the Products with their purported protein amount and/or protein DV% claims, Defendant knew that the claims are false and misleading, yet still advertised, labeled, and packaged the Products with the false and misleading claims.

57. Simply put, Defendant's protein amount and/or protein DV% for the Products are a farce. Defendant knowingly prepared the material on their website and product labels to misrepresent the true protein amount and/or protein DV% for the Products.

58. Plaintiffs and Class Members would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant. Indeed, high protein products are generally sold at a premium price, due to the importance of protein as alleged herein. Accordingly, Plaintiffs and Class Members paid more than they would have otherwise paid had the labels been accurate.

59. Defendants intended for Plaintiff and the Class members to be deceived or misled. Defendants' deceptive and misleading practices proximately

caused harm to the Plaintiffs and the Class.

60.     Consumers have been harmed because they bought goods and likely paid a premium for those same goods which did not work as advertised.

61.     As such, consumers, such as Plaintiffs and members of the putative Class, were harmed and they would not have purchased or would have paid substantially less for the Products had they been advertised correctly – which is to say that they would have been advertised as providing protein amounts in amounts less than what was advertised (for the Products described above) and %DV protein amounts in amounts less than what was represented; however, they were not advertised as such.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes.

63.     Plaintiff Christopher Bates brings this action individually and on behalf of the following Massachusetts Class:

> During the fullest period allowed by law, all persons in the State of Massachusetts who purchased any of the Products for personal use and not for resale within the State of Massachusetts (the "Massachusetts Class").

64.     Plaintiff Rosemarie Ramirez brings this action individually and on behalf of the following New York Class:

> During the fullest period allowed by law, all persons in the State of New York who purchased any of the Products for personal use and not for resale within the State of New York (the "New York Class").

65.     Collectively, the Massachusetts and New York will be referred to as the Classes.

66.     Specifically excluded from the Classes are Defendant, its officers, directors, agents, trustees, representatives, employees, principals, servants, partners, joint venturers or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its

officers and/or directors, the judge assigned to this action and any member of the judge's immediate family.

67.     Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Classes should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

68.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

69.     Numerosity – Federal Rule of Civil Procedure 23(a)(1). The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

70.     Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

- Whether the Products' contents are mislabeled pursuant to the FDCA;

- Whether Defendant's Products are misbranded because the labels violate the FDCA and are false and misleading;

- Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely

CLASS ACTION COMPLAINT

to rely upon to their detriment;

- Whether Defendant knew or should have known that the representations and advertisements regarding the Products was false and misleading;

- Whether Defendant's acts and omissions violate Massachusetts and/or New York State law;

- Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

- Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

71.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

72.     Typicality – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the Products' illegal ingredients and unlawful implied disease claims.  Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all Class Members sustained monetary and economic injuries.

73.     Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are a member of the Classes and their interests do not conflict with the interests of the

Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

74.     Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).  Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

75.     Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).  Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

76.     Superiority – Federal Rule of Civil Procedure 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a

potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York General Business Law § 349
### (On behalf of Plaintiff Bates & the New York Class)

77.     Plaintiff Bates reincorporates and re-alleges each preceding paragraph herein and bring this claim on behalf of the New York Class.

78.     GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

79.     In its sale of goods throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of GBL § 349.

80.     Plaintiff Bates and the New York Class are consumers who purchased products from Defendants for their personal use.

81.      By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Beyond Meat Products contain the correct amount of protein, as stated on the Product's label.  Had Plaintiff Bates and the New York Class been apprised of these facts, they would have been aware of them and would not have purchased the Products.

82.     The foregoing deceptive acts and practices were directed at consumers.

83.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the quality of the Products to induce consumers to purchase the same.  Reasonable consumer would knowingly not have purchased the Beyond Meat Products if the protein contents had been truthfully advertised, or they would not have paid the price premium associated with

22

high protein products.  By reason of this conduct, Defendants engaged in deceptive conduct in violation of GBL § 349.

84.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Bates and the New York Class have sustained from having paid for and used Defendant's Beyond Meat Products.

85.     As a result of Defendant's violations, Plaintiff Bates and the New York Class have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

86.     On behalf of themselves and other members of the New York Cass, Plaintiff Bates seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation Of New York General Business Law § 350**
**(On behalf of Plaintiff Bates & the New York)**

87.     Plaintiff Bates reincorporates and re-alleges each preceding paragraph herein and bring this claim on behalf of the New York Class.

88.     GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

89.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

90.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Beyond Meat Products contain the correct amount of Protein, as stated on the Product's label. Had Plaintiff Bates and the New York Class been apprised of these facts, they would have been aware of them and

1  would not have purchased the Products.

2      91.    The foregoing deceptive acts and practices were directed at

3  consumers.

4      92.    Defendants' false, misleading, and deceptive statements and

5  representations of fact were and are likely to mislead a reasonable consumer acting

6  reasonably under the circumstances.

7      93.    Defendants' false, misleading, and deceptive statements and

8  representations of fact have resulted in consumer injury or harm to the public

9  interest.

10     94.    Defendant's actions are the direct, foreseeable, and proximate cause

11  of the damages that Plaintiff Bates and the New York Class have sustained from

12  having paid for and used Defendant's Beyond Meat Products.

13     95.    As a result of Defendant's violations, Plaintiff Bates and the New

14  York Class have suffered damages because: (a) they paid a premium price based on

15  Defendant's deceptive conduct; and (b) the Products do not have the characteristics,

16  uses, benefits, or qualities as promised.

17     96.    On behalf of themselves and other members of the New York Cass,

18  Plaintiff Bates seeks to recover their actual damages or fifty dollars, whichever is

19  greater, three times actual damages, and reasonable attorneys' fees.

20                            **COUNT III**
21          **Violation Of Magnuson-Moss Warranty Act**
                    **15 U.S.C. § 2301,** *et seq.*
22  **(On behalf of Plaintiffs & the New York and Massachusetts Classes)**

23     97.    Plaintiffs reincorporate and re-allege each preceding paragraph herein

24  and bring this claim on behalf of the New York Class.

25     98.    As previously alleged, this Court has original jurisdiction over this

26  matter based upon the requirements of CAFA; therefore, the Court has alternate

27  jurisdiction over Plaintiffs' Magnuson-Moss claim.

28     99.    The Products are consumer products as defined in 15 U.S.C. §

2301(1).

100.   Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Products for personal and household use and not for resale or commercial purposes.

101.   Plaintiffs purchased the Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

102.   Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

103.   The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

104.   The MMWA provides a cause of action for breach of warranty, including the violation of express and implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

105.   Defendant violated the express warranty because despite claiming certain amounts of protein content and/or %DV of protein, those amounts are not found within the Products.

106.   In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that it does is not permitted by law.

107.   By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

108.   Plaintiffs and the Classes fulfilled their obligations under the express warranties for the Products.

109.   As a result of Defendant's breach of warranties, Plaintiffs and the Classes are entitled to revoke their acceptance of the Products, obtain damages,

punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of a class of all others similarly situated, seek a judgment against Defendant, as follows:

   a. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

   b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

   c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

   d. For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

   e. For prejudgment interest on all amounts awarded;

   f. For an order of restitution and all other forms of equitable monetary relief;

   g. For injunctive relief as pleaded or as the Court may deem proper; and

   h. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs incurred in bringing this lawsuit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: June 28, 2022                    Respectfully submitted,

                                        */s/ Trenton R. Kashima*
                                        Trenton R. Kashima (SBN 291405)

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
Email: tkashima@milberg.com

Alex R. Straus, SBN 321366
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel: 865-247-0080
Email: astraus@milberg.com

Nick Suciu*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

Gary Klinger*
Russell Busch*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.:   (866) 252-0878
Email: gklinger@milberg.com
            rbusch@milberg.com

J. Hunter Bryson*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Email: hbryson@milberg.com

CLASS ACTION COMPLAINT

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the Class*

CLASS ACTION COMPLAINT